IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JOHN T. BIERK, | ) | |
| | ) | |
| Plaintiff, | ) | No. 19 C 5167 |
| | ) | |
| v. | ) | Magistrate Judge Jeffrey Cole |
| | ) | |
| TANGO MOBILE, LLC, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff has filed a Motion to Compel and for Sanctions against defendant CORT as a result of its Fed.R.Civ.P. 30(b)(6) deposition. It argues that the witness was not properly prepared and wants either another opportunity to depose a 30(b)(6) witness at CORT's expense, or an order barring CORT from presenting evidence at trial" on any topic the court finds it did not adequately prepare its witness." [Dkt. #115].

At seemingly every turn, the parties in this case have struggled with discovery. In the last two months, the parties have done their best to monopolize the court's attentions, filing motion after motion regarding their problems getting through rather routine matters in what appears to be a rather unexceptional contract dispute. [Dkt. ##87, 90, 93, 95, 97, 99, 100, 109, 111, 113, 115, 118, 120]. Essentially, plaintiff claims that he developed sensor-based technology, called Tapdn, in exchange for a one-third partnership in defendants' business. [Dkt. #9]. As can best be gleaned from the parties' filings, and they do not delve too deeply into it, the application seems to be designed to keep track of rental furniture. [Dkt. ##9; 36]. Apparently, one can place a sensor in a chair or at a desk and log on to the application in order to monitor whether anyone is sitting there, instead of merely

looking to see if someone is sitting there. https://www.cort.com/4site.

In view of that, it may be a good time to remind the parties that Fed.R.Civ.P. 26(b)(1) requires that discovery be "proportional to the needs of the case, considering the importance of the issues at stake in the action,. . . ." Proportionality, like other concepts, requires a common sense and experiential assessment. *See, e.g., BankDirect Capital Fin., LLC v. Capital Premium Fin., Inc.*, 326 F.R.D. 171, 175 (N.D. Ill. 2018) ("Chief Justice Roberts' 2015 Year-End Report on the Federal Judiciary indicates that the addition of proportionality to Rule 26(b) 'crystalizes the concept of reasonable limits on discovery through increased reliance on the common-sense concept of proportionality.' "). In this case, motions seem to be filed in haste before meeting and conferring in good faith and then later withdrawn – after having already been reviewed by the court. Claims are made that materials are confidential and must be sealed but, when the parties are asked to support such claims, they cannot and those motions are later withdrawn. Withdrawn or not, every motion requires the court's time and attention. Arguably, the parties' many filings and many fights may have already outstripped the importance of the issues at stake in this contract case.

The current dispute seems to fall right in line with the parties' other problems. The 30(b)(6) deposition at issue was noticed over a year ago, back on January 14, 2020. Yet, it was not scheduled until over four months later, on April 29, 2020. The parties then postponed the deposition "due to the pandemic" [Dkt. #71, Par. 4], although one presumes it would have been conducted virtually as most depositions were by that time. The parties didn't next meet and confer over deposition dates until another five months later, on October 1, 2020. [Dkt. #71, Par. 7]. Still, at that late date, defendant CORT did not provide any potentially dates for a 30(b)(6) deposition at that time, and plaintiff finally filed a motion to compel the deposition on October 5, 2020. [Dkt. ##71, Par. 7; 73,

Par. 8]. Discovery was set to close on November 16th. As a result, I had to order defendant CORT to do something it had been under an obligation to do long before:

> Despite the long standing nature of the dispute and the imminency of fact discovery closure on 11/16/20, the matter was not brought to the court's attention until now. I instructed the parties this morning to immediately set dates in the immediate future for the depositions of the individuals mentioned in the Motion to Compel. Counsel were instructed to call the court this morning, as soon as those dates have been established.

[Dkt. #76]. In about an hour, CORT's difficulties in providing a date just melted away and the parties were able to schedule a deposition for December 17, 2020. [Dkt. #77]. CORT's delay and recalcitrance in regard to such a routine matter, obviously, was unacceptable.

It would seem, however, that CORT wasn't completely on board the cooperation train. On December 14th, three days before the deposition, plaintiff emailed CORT to ask who their 30(b)(6) witness was. CORT's response was "TBD." [Dkt. #115-4]. So, from all appearances, CORT had not taken the matter seriously or, if it had, was playing fast and loose with its opponent. A witness could not be selected and then properly prepared to testify on a number of topics in just a couple of days. *See, e.g., Medline Indus., Inc. v. Wypetech, LLC*, No. 20 CV 4424, 2020 WL 6343089, at *4–5 (N.D. Ill. Oct. 29, 2020)("An attorney's duty to prepare corporate representatives for a Rule 30(b)(6) deposition (or to prepare any witness for a deposition for that matter) takes place before the deposition begins."); *Aldridge v. Lake Cty. Sheriff's Office*, No. 11 C 3041, 2012 WL 3023340, at *4 (N.D. Ill. July 24, 2012) (Under Rule 30(b)(6), a corporation is obligated to make a good faith effort to designate persons with knowledge on the designated topics and to prepare those persons in order that they can answer fully, completely, and unevasively the questions posed by the deposing party.).

But, the blame for what went on at the deposition cannot be laid entirely at CORT's doorstep. According to plaintiff, CORT's witness was unprepared to answer topic after topic – Topic Nos. 5, 10, 11, 13, 14, 17, 20, 21 – during a period that spanned an entire afternoon. [Dkt. #115, at 7-12 (citing Dep. Trans., at 106-190)]. So, if plaintiff is taken at its word, several hours were wasted questioning the witness on timelines and contract formation with the witness claiming not to know or not remember. Yet, at no point did plaintiff avail itself of the remedy provided by the Federal Rules. Under Rule 30(d)(3), "a party may move to terminate . . .[a deposition] on the ground that it is being conducted in bad faith . . . ." The fact that plaintiff made no such motion at any point during what it now claims was hours of bad faith conduct undermines its claim that it was so hard done by CORT and counsel that sanctions are warranted.

Now, perhaps plaintiff was unaware of Rule 30(d)(3) or read it to apply only to deponents. Perhaps going through with what it now claims was a mostly futile exercise was a strategic move of some sort. But, even if either was the case – or there was some other motivation or rationale – plaintiff has, to a large degree, made his own bed, as the saying goes. Not once or twice, but *four* times over the course of the last few months, and twice recently, I instructed the parties in writing that, should disputes or difficulties arise during depositions, they were to contact me through my courtroom deputy, with a phone number that was provided. [Dkt. #60 ("Counsel should contact the Court should any difficulties arise during depositions. I can be reached through my courtroom deputy, . . . ."); # 72 (" Counsel should contact the Court should any difficulties arise during depositions. I can be reached by a call to my courtroom deputy, . . . ."); #85 ("Counsel should contact the Court should any difficulties arise during depositions. I can be reached by a call to my courtroom deputy, . . . ."); #86 ("Counsel should contact the Court should any difficulties arise during

4

depositions. I can be reached by a call to my courtroom deputy, . . . .")]. It is often far easier, and almost always more efficient in terms of judicial resources and cost to the parties to resolve the types of disputes plaintiff now presents in bulk when they arise. Indeed, resolving the initial dispute that afternoon may well have saved the rest of the afternoon one way or another. Simply put, the plaintiff was on notice that plowing through what it might later characterize as a useless afternoon and moving for sanctions later on was not an acceptable course. Nevertheless, the plaintiff disregarded four court Orders.

The same applies to CORT. In its response to plaintiff's motion, CORT depicts plaintiff's counsel as conducting the deposition in an abusive manner, challenging the witness to a memory contest and hoping he would fail. [Dkt. #117]. These are uniquely the kinds of matters that are easily resolved with a phone call. But, just like the plaintiff, CORT didn't avail itself of the remedy provided by Rule 30(d)(3). And just like plaintiff, CORT ignored four separate court Orders setting out the proper procedure to follow if and when the issues CORT now complains of arose.

So, the court has to assume that perhaps things were not nearly as bad as each side now belatedly claims a month later. Or, by not taking the action recommended repeatedly in court Orders, the parties are exaggerating and the parties have waived their complaints. But, belatedly, about a month after the disputes could have been resolved efficiently at the moment, the parties have brought them to court. What follows is a summary of the topics at issue and rulings on them, issued within the broad discretion courts have to resolve discovery disputes. *Crawford-El v. Britton*, 523 U.S. 574, 598 (1998); *Fields v. City of Chicago*, 981 F.3d 534, 551 (7th Cir. 2020).

**Topic 5**: "The timeline of the negotiation of the asset purchase agreement between CORT and Tango Mobile regarding the Tapdn product or business, the timing and amount of offers and counteroffers,

5

the bases for CORT's offers and counteroffers, and the terms of the finalized asset purchase agreement in 2019." The testimony at issue went like this:

Q What was the date of the first offer? ...

A I'm having a hard time remembering the date, Mr. Carpenter.

Q Do you have any -- do you have any documents you could look to?

A I was going to ask you the same question. I don't.

Q That would refresh your recollection?

A I believe there were e-mails. I did review e-mails between Himalesh and Richard Ritter and Himalesh and Debbie Lansford. I know that there were -- I can't just -- for the life of me, I can't remember the specific dates."

(Dep Tr at 106-07). The witness was able to generally recall that discussions began in December 2018, continued through January and February 2019, and that by March, they had started to put a potential purchase agreement on paper, with a price agreed to in May. (Dep Tr at 105-06). Exact dates within that timeline were not provided. The witness did manage to provide a month by month breakdown from December 2018 through May 2019 of the discussions between CORT and Tango Mobile regarding the Tapdn product. (Dep. Tr at 105:17-106).

If counsel truly prepared the witness in the two or three days between his "TBD" email and the deposition, it is not clear why the witness and counsel did not have those emails on hand, or any of the documents reviewed, arranged by topic for easy access on this topic and the topics that followed. By the same token, on this and several other occasions when the witness asked if plaintiff's counsel had a document, it's not clear why plaintiff's counsel simply did not provide it. *See, e.g., MiMedx Grp., Inc. v. Fox*, No. 16 C 11715, 2018 WL 11223426, at *3 (N.D. Ill. July 25,

2018)("... decision not to show the witness documents that might have allowed him to testify more fully is not a basis now to re-open the deposition."). If there are documents, on either side, they ought to have been accessible. There is no requirement that a Rule 30(b)(6) witness memorize thousands of pages of documents and be able to recall in exacting detail the minutia of such voluminous records. *Seaga Mfg., Inc. v. Intermatic Mfg. Ltd.*, No. 13 C 50041, 2013 WL 3672964, at *2 (N.D. Ill. July 12, 2013)("... Rule 30(b)(6) is not designed to be a memory contest . . . ."): *Bayer Healthcare Pharm., Inc. v. River's Edge Pharm., LLC*, No. 1:11-CV-01634-RLV, 2013 WL 11901530, at *2 (N.D. Ga. Apr. 26, 2013), *See also Brown v. W. Corp.*, No. 8:11CV284, 2014 WL 1794870, at *1 (D. Neb. May 6, 2014)("... depositions under 30(b)(6) are not meant to be traps in which the lack of an encyclopedic memory commits an organization to a disadvantageous position."); *QBE Ins. Corp. v. Jorda Enters., Inc.*, 277 F.R.D. 676, 689 (S.D. Fla. 2012) ("[T]he [30(b)(6) ] rule is not designed to be a memory contest.").

**Topic 10**: " The timeline of the negotiations of the announced March 18th, 2018 partnership between CORT and Tango, the timing and amount of offers and counter-offers, and the terms of the partnership agreement." The testimony went in a similar vein. The witness testified that December 2017 was when partnership negotiations began. As to the exact date, he asked if plaintiff's counsel had a document; plaintiff's counsel did not respond. The questioning for exact dates proceeded:

Q And do you remember when the second communication between Tango Mobile and CORT was regarding the potential for a partnership?

A Can't recall.

Q What about the third, same thing? A Can't recall"

(Dep Tr at 109).

**Topic 11**: "The timeline of the negotiation between plaintiff, Todd Bierk, and CORT regarding the consulting agreement of April, 2018, the times and amount of offers and counteroffers, and communications regarding same." Again, the witness could not provide certain exact dates:

Q What was the date of the first offer in the negotiations between CORT and Todd Bierk?

A: I'd have to review a document, if you have one, to help refresh my memory. I don't know the specific date, as I sit here.

Q What was the amount of the first offer?

A. The first offer from CORT or the first offer from Bierk?

Q. Who made the first offer?

A I believe that Mr. Bierk made an offer to CORT.

Q What was the date of that?

A. I don't recall when."

Q. What was the date of CORT's response?

A. I don't know the date.

(Dep Tr at 112-13). The witness then testified as to what Bierk's first written offers were. (Dep Tr at 114). The witness said he never " saw a document where CORT, in writing, turned that offer down. It may have been a verbal offer -- a verbal conversation between Mr. Bierk and Mr. Ritter." But he did not know for sure one way or the other. (Dep Tr at 115).

**Topic 13(a)**: "When CORT's management became aware of plaintiff Todd Bierk's actual or proposed involvement with CORT and Tango Mobile relating to Tapdn." The testimony, again, went along familiar lines:

A. September of 2017 is the best -- about as close as I'll get.

8

Q. And how did you get that date?

A. In preparation for the deposition I recall reading a document.

Q. What document?

A. It would have been an e-mail between Mr. Bierk and Mr. Ritter.

Q. Do you have the -- Do you have that document with you?

A. It's in a pile of documents. I don't have it handy, no.

(Dep Tr at 120). And again, it ought have been handy. That's part of preparation for a deposition.

**Topic 13(b)**: "How CORT's management became aware of plaintiff, Todd Bierk's, actual or proposed involvement relating to Tapdn." The witness said Gloria Rose introduced the plaintiff to Richard Ritter but he had no more than a general idea of when:

Q. And when was that?

A. I don't recall the date.

Q. Do you have an estimate?

A. I believe it had to -- it did occur before he was hired as a consultant in 2018, so it had to be before that date. But I can't narrow it down any more.

Q. So before April of 2018 is the best CORT can say as to the timing?

A. Yes."

(Dep Tr at 122-23).

**Topic 14:** "When, to CORT's knowledge, did any employee of CORT first become aware of a romantic relationship between Todd Bierk and Gloria Rose, who it was, and how they became aware." The witness first had to speculate as to which employees knew of the relationship. (Dep Tr at 129-30), and then conceded he didn't know for sure. (Dep Tr at 130-31). Indeed, how could he?

9

He could not crawl inside the head of every CORT employee; he could "only answer when CORT became aware, but not when any specific employee did" (*Id.*).

**Topic 17:** Topic 17 requested the factual basis for CORT's Affirmative Defenses. Affirmative Defense No. 1, states that the terms of the consulting agreement plaintiff had with CORT bar his claims." Plaintiff, of course, has the agreement, but argues it was entitled to testimony on CORT's "interpretations and opinions" of the agreement. *See Buck v. Ford Motor Co.*, No. 3:08CV998, 2012 WL 601922, at *3 (N.D. Ohio Feb. 23, 2012); *United States v. Taylor*, 166 F.R.D. 356, 361 (M.D.N.C. 1996). At the deposition, the witness read through a couple of provisions in the agreement that he thought were responsive to the topics, but cautioned that they were legal concepts and he was a lay person. (Dep Tr at 146-49). That's an adequate response.

Affirmative Defense No. 3 states: "The conduct complained of in the complaint was the result of plaintiff's own fraud and/or civil conspiracy." Plaintiff's counsel asked for the facts, and CORT's witness responded: "Yeah, CORT – again, CORT relies on their attorneys to provide legal defenses on behalf of CORT. So I believe that they have answered it on our behalf, so I can't provide any additional insight." (Dep Tr at 151). That response is inadequate.

The last sentence of Affirmative Defense No. 3 states: "But e-mails that plaintiff wrote and which are in his and/or his attorney's possession, evidence that he knew he had no partnership or ownership interest in Tapdn." Plaintiff asked the witness to identify the emails. The witness referred counsel to emails Bierk wrote to CORT asking for a job which, of course, don't jibe with Bierk thinking he had a one-third partnership share. (Dep Tr at 152). That's an adequate response, but again, the witness and CORT's counsel ought to have had those emails handy.

**Topics 20-21** — Topics 20 and 21 sought, inter alia, "the amount of money CORT has ever paid

personally to Mr. Kumar, for what, when each payment was made and the amount on each date. Topic 21 was the same but for payments made to Mr. Kumar's company, defendant Tango Mobile. As to No. 20, the witness testified: " I don't know the specific date in which payable wire transfers money to Mr. Kumar. I can only state that it's shortly after each month end." ( Dep Tr at 160). As for Topic 21, the witness responded:"Gosh, I don't -- I don't have the specific date." (Id at 161). As for the dates of additional payments to Tango Mobile, the witness, once again, did not know "without the benefit of looking at documents." (*Id*.). He had the documents and had reviewed them but, again, did not have them at the deposition. (Dep tr at 163-64 ("Q. So you had the date and times in preparation for the deposition but you don't have them with you today?" A. I do not have them with me today")). There was, again, no excuse for not having the documents needed there.

**Topic No. 3**: "CORT's current net worth and the basis for determining same." CORT's counsel objected and instructed the witness not to respond, stating: "Objection, we've served our objections on this topic. And we believe that the case law in this district supports our position that discovery on this is postponed until after summary judgment stage. So directing my client not to answer topic number three on that basis." (Dep Tr at 91-92). As plaintiff has made a punitive damages claim, CORT's net worth is relevant, but it is far more properly the target of documents requests or interrogatories. The lone case plaintiff cites says no different. *See Platcher v. Health Professionals, Ltd.*, 2007 WL 2772855, at *3 (C.D. Ill. Sept. 18, 2007)(finding document request for defendants' current assets and liabilities would be relevant to the punitive damages claims against them."); *See also Novak v. Pearlstein*, 2016 WL 3586899, at *3 (N.D. Ill. 2016)(documents requests); *U.S. E.E.O.C. v. Pioneer Hotel, Inc.*, 2014 WL 5045109, at *5 (D. Nev. 2014)(document requests); *S. California Hous. Rights Ctr. v. Krug*, 2006 WL 4122148, at *4 (C.D. Cal. 2006)(documents

requests).

The final bone of contention concerns what documents the witness reviewed and how he prepared. The witness testified he wrote notes, had them with him, but refused to read them into the record or produce them, based on privilege. (Dep Tr at 21-22). He testified he had "more than 10 [pages] and less than 50" (Dep Tr at 22) and explained that he made (1) notes of witness interviews, and (2) notes regarding documents he re-viewed. He testified that he reviewed those notes to prepare for the deposition. (Dep Tr at 22-23). The defendant misreads plaintiff's argument as demanding notes the witness took about conversations he had with counsel. [Dkt. #117, at 10]. Indeed, at the deposition, plaintiff's counsel explained that he was talking about notes from conversations he had with counsel, but with *other* individuals. (Dep tr at 22-29). So, any objection CORT might have had as to testimony regarding *those* notes was waived. As neither side followed the procedures they were instructed to follow on multiple occasions, there shall be no fees and both sides will bear their own costs.

Accordingly, the plaintiff is entitled to additional deposition time regarding the drawing board for additional deposition time regarding Topics Nos. 5, 10, 11, 13a, 13b, Affirmative Defense No. 3, and the notes. Two hours should suffice. Both counsel should have whatever documents are necessary available in order that the topics may be addressed without further glitches. The additional deposition time must be scheduled not later than March 15, 2021. As neither side followed the procedures they were instructed to follow multiple times, the fee and costs awards the parties request are inappropriate and each side shall bear its own fees and costs.

ENTERED: _____
UNITED STATES MAGISTRATE JUDGE

**DATE:** 2/23/21