**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | | |
|---|---|---|---|
| **JOHN T. BIERK,** | ) | | |
| | ) | | |
| **Plaintiff,** | ) | **No. 19 C 5167** | |
| | ) | | |
| **v.** | ) | **Magistrate Judge Jeffrey Cole** | |
| | ) | | |
| **TANGO MOBILE, LLC,** *et al.,* | ) | | |
| | ) | | |
| **Defendants.** | ) | | |

**MEMORANDUM OPINION AND ORDER**

Defendant, CORT, filed a Motion to Compel, asking for court intervention on what appear to be a dozen or so separate discovery disputes. [Dkt. #120]. The motion relates, in somewhat labyrinthine fashion, claimed multiple deficiencies in the plaintiff's productions. First, CORT accuses plaintiff of withholding documents in *five* categories: all of his text messages, including those with key witnesses such as Gloria Rose; withholding communications with Rose, including an email in which Rose sent plaintiff's counsel a Dropbox of documents while she was still working for CORT; communications with Tango; plaintiff's damages claims and CORT's mitigation defense; and information that CORT claims it needs to discover all of ]plaintiff's responsive documents. [Dkt. #120, at 1-2]. Next, CORT breaks those grievances into *eleven* separate categories, which essentially target plaintiff's responses to Requests for Production Nos. 2, 7, 8, 37, 40, and responses to Interrogatories Nos.3, 5, 6, 7, and adds a couple of additional requests – 89 pages of emails that "appear to be incomplete" and a demand that plaintiff turn over all his devices for forensic mirror imaging. [Dkt. #120, at 2].

From there, the Motion breaks its complaints into *four* categories of discovery: communications with Rose, communications with Tango, tax returns, and a sweeping category

purportedly covering all plaintiff's responses to CORT's second set of interrogatories. [Dkt. #120, at 3-6]. That fourth category, regarding the second set of Interrogatories focuses on plaintiff claiming his ex-wife, whom he would not name, changed the password to an old cellphone in 2018. [Dkt. #120, at 5-6].[1] For each category, CORT provides some factual background and sufficient information demonstrating that the parties met and conferred as required by Local Rule 37.2.

At this point in the Motion, CORT develops and supports with pertinent authority arguments as to its entitlement to *three* categories of discovery: communications with Rose and/or Tango that are responsive to Document Request Nos. 7-8; tax returns and employment information that are responsive to Document Requests Nos. 37 and 40, and Interrogatories Nos. 6 and 7; the name of the mysterious former spouse who can provide the password or a turnover of the cellphone for forensic inspection. [Dkt. #120, at 11-12]. For good measure, CORT adds a two-page chart, at page 251 of the 267-page exhibit it attaches to its Motion, which breaks down its discovery grievances into *nine* categories. [Dkt. #120-1, at 251-52]. So, to review: the Motion began with five categories, is taken to eleven, then four, then three, and finally, nine. With all deference, it seems an unwieldy way to ask a court for relief, since, as the Seventh Circuit has stressed, "[a]n advocate's job is to make it easy for the court to rule in his client's favor . . . ." *Dal Pozzo v. Basic Mach. Co.*, 463 F.3d 609, 613 (7th Cir. 2006).[2]

---

[1] As though this seemingly routine contract dispute were some Cold War spy novel, plaintiff first said only that a "third party" changed the password, then "authorized" his attorney to reveal that it was a "former spouse." Still, the name of the former spouse remains clouded in mystery at plaintiff's behest.

[2] In the future, it would aid understanding if CORT's counsel, rather than digitally filing 20 exhibits in a single 260-page clump, or 7 in a 36-page clump, downloaded each as a separate exhibit as plaintiff's counsel conveniently does. [*See* Dkt. ##122-1 to 122-8]. It allows for ease of toggling back and forth between brief and exhibits In essence, it is the digital version of filing paper exhibits with tabs, as required by Local Rule 5.2(f).

But the complexities of the parties' problems are a matter of perspective. Where CORT feels they are such to necessitate a presentation that is complex to the point of being byzantine, plaintiff's response is radically at the other end of the spectrum. It is a terse, perhaps overly simplistic, five-page affair that cites just one case – and that from another Circuit – regarding production of cellphones for inspection. All those other issues – whether they number three, four, five, nine, or eleven – are all, according to plaintiff, moot or not ripe. [Dkt. #122]. For plaintiff, CORT jumped the gun filing its motion to compel – despite many of plaintiff's response being due for months – and ignored supposed agreements regarding limitations on some of that production. Plaintiff's motion and exhibits – email exchanges between the attorneys, mostly – do offer a peek into what has gone on between the parties. There is a jejune dispute about the meaning of "pertinent" as opposed to "relevant." The upshot was, apparently, plaintiff agreed to produce relevant (1) "communications regarding the claims and matters stated in the Complaint" and (2) communications "mentioning or referencing CORT, Tango Mobile, Himalesh Kumar and/or the Tapdn product." [Dkt. #122, at 3-4]. But, as plaintiff concedes, plaintiff's agreement did not come until after CORT had to file its motion to compel. [Dkt. #122, at 3-4]. A party that delays or obstructs discovery cannot complain when the other side files a motion *right* before a claimed concession is alleged to have been forthcoming.

So, was CORT's motion moot? Not exactly. As the history of discovery disputes like this attest. Discovery conflicts between counsel are often examples of the *Rashomon* effect, but at least in the Kurosawa masterpiece, the characters agreed they were in the same story. When counsels' respective versions of what has gone before are compared, that does not seem to be the case here. CORT's reply brief appears to break the still live issues into *four* categories. [Dkt. #125]. According

to CORT's reply, plaintiff only produced a few documents, only produced "some" Dropbox documents and emails, and produced no tax records. We are told plaintiff allegedly stole the Dropbox documents from CORT; actually, we learn Gloria Rose purportedly stole them. [Dkt. #125]. Much of the discovery between the parties, appears then to be still unresolved, contrary to much of the picture plaintiff attempts to paint in his brief Response [Dkt. #122], although perhaps much of this might have been averted if there had been more than two Rule 37.2 conversations over the course of five months.

Beyond the foregoing, we need not recount the entirety of the parties' email exchanges over their disputes since last October. In all likelihood, what in fact occurred lies somewhere between the parties' various (and necessarily self-interested) versions of events. In any event, in committing their discovery dispute to the court for resolution, the court has extremely broad discretion in resolving discovery battles. And discretion means that the result is within a range, not a point. Indeed, in matters of discretion, two decision-makers—on virtually identical facts— can arrive at opposite conclusions, both of which can constitute appropriate exercises of discretion. *Compare United States v. Boyd*, 55 F.3d 239 (7th Cir. 1995) with *United States v. Williams*, 81 F.3d 1434 (7th Cir. 1996). An abuse of discretion occurs when no reasonable person could take the view of the district court. *Mejia v. Cook County, Ill.,* 650 F.3d 631, 635 (7th Cir. 2011); *United States v. Banks,* 546 F.3d 507, 508 (7th Cir.2008); *U.S. v. Re*, 401 F.3d 828, 832 (7th Cir. 2005). *Cf. United States v. Bullion,* 466 F.3d 574, 577 (7th Cir.2006)(Posner, J.)("The striking of a balance of uncertainties can rarely be deemed unreasonable...."). Indeed, "substantial discretion... ensures inconsistency." *Johnson v. Daley*, 339 F.3d 582, 593-94 (7th Cir. 2003).

Consequently, when attorneys get into disputes over routine matters such as this and decide

not to give an inch here or there, they are necessarily assuming a certain risk. Is a discovery response adequate? Is a request overly broad? One judge will say yes, another will say no. *See Vann-Foreman v. Illinois Cent. R.R. Co.*, 2020 WL 6262361, at *2 (N.D. Ill. 2020); *Generation Brands, LLC v. Decor Selections, LLC*, 2020 WL 6118558, at *5 (N.D. Ill. 2020); *Williams v. Estates of Hyde Park, LLC*, 2020 WL 5702297, at *2 (N.D. Ill. 2020). Yet, both judges can be "correct." But the matter is before the court for decision and here are the rulings; to the extent I can discern what actually is in dispute given the conflicting nature of the parties' respective presentations.

First, the phone issue. Plaintiff's choice is simple. He cannot withhold all the texts/emails from the requested discovery because an unnamed ex-wife has the password. His options are produce the password and the texts/emails, or produce the phone for a third-party inspection. Plaintiff's only argument against this is that the issue is not ripe because CORT never specifically requested production of the phone. But CORT requested the relevant texts; plaintiff first said he couldn't get them from his phone because a third part changed the password, then he said an ex-wife did and refused to give her name so the password might be retrieved. Now he will go no farther, and has not offered any compromise. That makes the issue very ripe indeed, and one plaintiff had ample opportunity to avoid.

"A forensic ESI exam constitutes an extraordinary remedy that is required '[o]nly if the moving party can actually prove that the responding party has concealed information or lacks the expertise necessary to search and retrieve all relevant data.' " *Belcastro v. United Airlines, Inc*., No. 17 C 1682, 2019 WL 7049914, at *2 (N.D. Ill. 2019). "Mere suspicion or speculation that an opposing party may be withholding discoverable information is insufficient to support an intrusive

5

examination of the opposing party's electronic devices or information system." *Belcastro*, 2019 WL 7049914, at \*2. *See Motorola Sols., Inc. v. Hytera Commc'ns Corp*, 365 F. Supp. 3d 916, 925 (N.D. Ill. 2019) ("The Advisory Committee Notes to Rule 34 recognize that courts must use caution in evaluating requests to inspect an opposing party's electronic devices or systems for ESI, in order to avoid unduly impinging on a party's privacy interests"). But we are beyond mere suspicion here. Plaintiff texted Rose and others on that phone during the pertinent period. He either cannot or will not open it and produce the texts that are relevant. Accordingly, any intrusiveness would not be undue and ultimately is of his own making. If plaintiff refuses to produce the password, or provide the name of whomever changed it, there has to be an inspection. Then, if he truly has privacy concerns, they can be addressed through agreed-upon protocols for third-party inspection, as is common practice. *See Belcastro*, 2019 WL 7049914, at \*4.

Plaintiff constructs a very similar obstacle to production of tax returns. He agreed to produce his tax returns on January 13, 2021. [Dkt. #120, pg. 5]. According to plaintiff's response brief: "Plaintiff provided tax-return authorizations weeks ago, but they lacked some information. Revised ones have been sent." [Dkt. #122, at 4]. But, as of February 22, 2021, plaintiff still had not done so. [Dkt. #122-1, at 2]. At one point, plaintiff apparently claimed "possession of them is the issue" because he filed his tax returns jointly with his ex-wife. [Dkt. #125-1, at 6-7]. It appears that CORT wants more than what plaintiff filed with the IRS, but it's not clear. [Dkt. #125, at 3]. START But that is neither what CORT requested, nor what it argued in its motion to compel. [Dkt. #120, at 2,10,11]. Complete authorization forms, which CORT concedes plaintiff has now provided [Dkt. #125, at 3 ("Bierk sent CORT a tax authorization form to obtain the records from the IRS, and he argued that CORT's motion to compel is moot. To the contrary, CORT is entitled to all tax records

within Bierk's control.")], are sufficient.

As to communications with Gloria Rose, they are relevant and must be produced. It is unfortunate that a personal matter – an extra-marital affair between plaintiff and Rose – has become part of this case; but it has. Plaintiff's counsel has even made it a topic of deposition questions. (Dkt. #125-1, at 18-19; at 22-29; 35]. Thus, plaintiff cannot throw the equivalent of a blanket privilege claim over all communications and documents he deems "personal."

In his response, plaintiff does not argue otherwise, but submits that the parties reached an agreement regarding the scope of production. [Dkt. #122, at 3]. CORT says plaintiff's counsel never got back to them regarding that agreement. [Dkt. #125, at 6].[3] But, as both sides agree as to the language [Dkt. ##122, at 3;125, at 6], the plaintiff is ordered to produce "all communications regarding the claims and matters stated in the Complaint, as well as all communications referencing CORT, Tango Mobile, Himalesh Kumar and/or the Tapdn product, regardless of whether or not the communication is of a personal nature." [Dkt. ##122, at 3;125, at 6].

Finally, there is the Dropbox issue, and, again, it involves Rose. In December of 2018, while she was still a CORT employee, Rose sent plaintiff's counsel a Dropbox link of documents from her personal email account. [Dkt. #120-1, at 4]. Plaintiff's thanked Rose, cc'ed plaintiff, and asked Rose to refrain from further communications until he could determine whether she was "'represented by counsel and/or [her] current position with [CORT]." *Id*. Plaintiff did not produce Rose's original email, the documents in the Dropbox, the actual Dropbox link, or the email notification(s) from Dropbox. In addition to these missing

---

[3] This, then, is a perfect example of why Local Rule 37.2 mandates in-person or telephonic communications. Emails are easily and often ignored or put off for later. In the midst of a phone conversation where an agreement is being made, there is either assent or dissent to a proposal.

Dropbox-related emails, Plaintiff also withheld transmittal emails showing how plaintiff or his lawyer received communications from Rose concerning Tapdn. [Dkt. #120, at 4].

Plaintiff insists he has repeatedly informed CORT's counsel that he could not open the dropbox link Rose provided. He apparently sent CORT's counsel screen shots of what it looked like, and was able to get certain documents to open, including CORT documents, and produced those. [Dkt. #122, at 4]. Thus, CORT's suspicions about Rose having their documents were confirmed. Plaintiff also states that he withdraws any objections to production of these Dropbox documents. [Dkt. #122, at 4]. He simply seems to be unable to open them and produce them.Accordingly, plaintiff will have to: (1) produce the native Dropbox link and emails containing it; (2) save the entire Dropbox link on a jump drive so that CORT can access the Dropbox link and the metadata; (3) produce all of the documents in the Dropbox, not a select few; (4) produce the original communication email from Rose on December 10, 2018; and (5) produce all communications between opposing counsel, his colleagues, or his law firm with Rose. [Dkt. #125, at 2-3].

Given the difficulties of assessing what was at issue here, and the fact that the parties had just two Rule 37 conferences over the course of several months – the most recent weeks before the motion to compel was filed – I do not find that this dispute is appropriate for an award of fees under Fed.R.Civ.P. 37(a)(5). Moreover, in view of those continuous difficulties, especially the parties' inability to agree what their issues are and present them to the court in an organized fashion for resolution, any future discovery must comply with the requirements of *Autotech Techs. Ltd. P'ship v. Automationdirect.Com, Inc.*, 2007 WL 2713352 (N.D. Ill. 2007)(motion must contain a detailed, joint statement of the parties' efforts to resolve their disputes over each of the document requests at

8

issue, along with their final positions, supported by pertinent authority, on each request that remains

in dispute). *See alsoPark Ridge Sports, Inc. v. Park Ridge Travel Falcons*, 2020 WL 6896090, at

*4 (N.D. Ill. 2020).

**CONCLUSION**

For the preceding reasons, the Motion [Dkt. #120] is granted in part and denied in part.

**ENTERED:** _____
UNITED STATES MAGISTRATE JUDGE

**DATE:** 3/22/21