IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JOHN T. BIERK, | ) | |
| | ) | |
| Plaintiff, | ) | No. 19 C 5167 |
| | ) | |
| v. | ) | Magistrate Judge Jeffrey Cole |
| | ) | |
| TANGO MOBILE, LLC, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

**INTRODUCTION**

March came in, not like a lion or a lamb, but with more discovery squalls from those involved in *Bierk v. Tango Mobile*. It has been a storm of virtual paper from the competing parties since mid-December, with the parties and counsel unable to agree on seemingly anything – including just what they are unable to agree on or what was said at a hearing, and failing to make much headway in conferences required by Local Rule 37.2. The current motion by plaintiff concerns claims of privilege defendant, CORT, has made over about 150 documents, but focuses on an August 15, 2019 memo from CORT attorney, Mr. Kanne, regarding CORT's interviews of then-CORT employee, Ms. Rose, an August 15, 2019 memo, numbered "REV I," and the last entry on the log. [Dkt. #126-4]. The notes are described as containing the lawyers mental impressions. For the following reasons, the plaintiff's motion [Dkt. #126] is denied. The parties are reminded that, based on their agreement, "[a]ll fact discovery shall close on April 16, 2021. No further extensions shall be given." [Dkt. ##78, 79].

**ARGUMENT**

Like other phases of discovery in this case, the dispute over CORT's privilege log has turned what should be a generally routine matter into a struggle. CORT did not produce a privilege log until November 6, 2020. [Dkt. # 130, Par. 1]. That was about a year after discovery began [Dkt. #45], and nine months after CORT began producing documents. [Dkt. #68, ¶. 6].[1] That first privilege log CORT produced wasn't worth the wait: for example, authors and recipients were listed without descriptions of their positions. Document entries were conclusory, at best, with descriptions like "Email communication reflecting legal advice from Duane Morris regarding litigation" or "Email communication gathering information for Duane Morris in preparation for litigation." [Dkt. #130-1]. In other words, "this document is legal advice because it's legal advice" and "this document is work product because it's work product." Obviously, that is unacceptable. And "unfortunately... saying so doesn't make it so...." *United States v. 5443 Suffield Terrace, Skokie, Ill.,* 607 F.3d 504, 510 (7th Cir.2010); *Madlock v. WEC Energy Group, Inc.*, 885 F.3d 465, 473 (7th Cir. 2018). "Notably absent

---

[1] Plaintiff alludes to a waiver as a result of the tardiness and delay in compiling a privilege log, but oddly does not develop the suggestion or support it with pertinent authority. [Dkt. #126, at 9]. A timely and adequate privilege log is required by the federal rules, and the failure to serve an adequate and timely privilege log may result in a waiver of any protection from discovery. *See Rao v. Bd. Of Trustees of the Univ. of Illinois*, 2016 WL 6124436, at *7 (N.D. Ill. 2016); *Buonauro v. City of Berwyn*, 2011 WL 3754820, at *8 (N.D. Ill. 2011) ("A litigant cannot withhold documents after it is served with discovery requests based merely on its own decision that a privilege exists, and the failure to provide a privilege log can result in a waiver of the protection that would otherwise be available."); *Babych v. Psychiatric Solutions, Inc.*, 271 F.R.D. 603, 608 (N.D. Ill. 2010) ("[A] timely and adequate privilege log is required by the federal rules, and ... failure to serve an adequate privilege log may result in a waiver of any protection from discovery."). But courts have been very hesitant to find blanket waivers however tardy and poorly put together a privilege log might be.

But some courts have been hesitant to find such sweeping waivers, however tardy and poorly put together a privilege log might be. *See, e.g., Sandra T.E. v. S. Berwyn Sch. Dist. 100*, 600 F.3d 612, 623 (7th Cir. 2010); *Belcastro v. United Airlines, Inc*., 2019 WL 1651709, at *5 (N.D. Ill. 2019)(collecting cases); *Monco v. Zoltek Corp*., 317 F. Supp. 3d 995, 1000 (N.D. Ill. 2018)(collecting cases).

from these allegations, however, is any proposed proof that state actors, not municipal actors, were engaged in this *de facto* discrimination." *Illinois Republican Party v. Pritzker*, 973 F.3d 760, 770 (7th Cir. 2020); *Donald J. Trump for President, Inc. v. Secy of Pennsylvania*, 830 F. Appx 377, 381 (3d Cir. 2020)("Free, fair elections are the lifeblood of our democracy. Charges of unfairness are serious. But calling an election unfair does not make it so. Charges require specific allegations and then proof. We have neither here."). Even the Solicitor General's unsupported assertions are not enough. *Digital Realty Trust, Inc. v. Somers*, _U.S._, 138 S.Ct. 767, 779 (2018).

In any event, plaintiff complained the parties exchanged emails, had one meet-and-confer by phone, and CORT gave it another try on December 7, 2020. [Dkt. #130, Par. 7]. That attempt was better, with topics on the emails provided. [Dkt. #130-5]. Not surprisingly, plaintiff still was not satisfied, and still more fevered emails were exchanged followed by another meet-and-confer, and still more emails went back and forth. [Dkt. #130, Pars. 8-22]. The result was a third version of CORT's privilege log on February 24, 2021, which was more detailed than the previous version. [Dkt. #130, ¶. 19]. Given the history of this case, plaintiff, not surprisingly, still voiced complaints, ultimately filing this motion to compel. All told, the current motion brings the total discovery motions in the last three months or so to about a dozen. Little wonder Judge Posner felt that pretrial discovery "is the bane of modern litigation." *Rossetto v. Pabst Brewing Co., Inc.,* 217 F.3d 539, 542 (7th Cir. 2000).

Plaintiff's motion seems to have two issues with CORT's privilege log. First, it still does not believe the descriptions are sufficiently detailed. It does not go into specifics; it just argues generically that while the descriptions got longer, they are not good enough. Ideally, a brief in a dispute like this one would provide an example of what an adequate description might look like.

3

But, plaintiff's brief does not do that, so the court, in effect, is expected to "know it when it doesn't see it," to paraphrase Justice Stewart's nebulous "definition" of obscenity in *Jacobellis v. Ohio*, 378 U.S. 184, 197 (1964) (concurring opinion). Indeed, the descriptions plaintiff complains about are not unlike the descriptions plaintiff attached to his own documents that he is withholding from discovery as privileged or work product.[2]

Plaintiff does cite *United States ex rel. McGee v. IBM Corp.*, 2017 WL 1232616 (N.D. Ill. 2017), where terse document descriptions like "reflecting request for legal advice" were found inadequate, and descriptions noting contracts and invoices were found to be business, rather than legal, work. But the descriptions here sufficiently beyond what the court dealt with in *McGee*. Confusingly, Plaintiff claims that defendant CORT's privilege log "only provides the author, recipients and date," and "does not describe in any way just what the subject matters of the documents claimed privileged." [Dkt. #126, at 10]. But that is inaccurate, for the log clearly does include subject matter descriptions for each document. For example: "Email communication reflecting legal advice from Duane Morris regarding litigation hold and preservation of records. This email is a communication between CORT and its counsel regarding the preservation of records in response to Plaintiff's claims. The email contains Duane Morris's legal advice regarding the preservation of records and litigation hold" and "Email communication reflecting legal questions that were subsequently communicated to Duane Morris about legal strategy in response to Plaintiff's lawsuit. In this email, Pederson and Ballard discuss legal questions regarding legal strategy in

---

[2] For example: "Correspondence between Mr. Bierk and counsel of record in this case, including attorneys and staff, regarding and/or containing and/or for the purposes of seeking legal advice, and/or which are in anticipation of litigation and/or which show Plaintiff's litigation strategy or mental impressions of counsel." [Dkt. #129-1].

response to Plaintiff's lawsuit. CORT subsequently discussed those questions and strategy with Duane Morris." [Dkt. #130-11]. And again, these types of descriptions have little in common with those found wanting in cases like *Ex rel. McGee.*

The second part of plaintiff's motion brings us to the particular document at issue here: attorney Kanne's notes from the August 15, 2019 interview of then-CORT employee, Ms. Rose. Attorney notes regarding witness's oral statements are the very definition of work product. "Forcing an attorney to disclose notes and memoranda of witnesses' oral statements is particularly disfavored because it tends to reveal the attorney's mental processes." *Upjohn Co. v. United States*, 449 U.S. 383, 399 (1981). "Where an attorney personally prepares a memorandum of an interview of a witness with an eye toward litigation[,] such memorandum qualifies as work product even though the lawyer functioned primarily as an investigator." *Harper & Row Publishers, Inc. v. Decker*, 423 F.2d 487 (7th Cir.1970).

Plaintiff tells us that "based on experience" – presumably counsel's "Mr. Kanne was [likely] there largely as a scrivener to record what Ms. Rose said." [Dkt. #126, at 11]. The court can't see why that would be the case, when CORT employee Mr. Seidman was there to take notes – notes produced to plaintiff. Moreover, even if Mr Kanne was there primarily as an investigator, when an attorney prepares a memorandum of a witness interview with an eye toward litigation, the memorandum qualifies as work product. *Lerman v. Turner*, 2011 WL 62124, at *7 (N.D. Ill. 2011). A verbatim recording of a witness statement, free of any mental impressions, would not qualify as work product. *The Manitowoc Co., Inc. v. Kachmer*, 2016 WL 2644857, at *4 (N.D. Ill. 2016). And there is nothing to suggest that was the case here.

There are limited situations in which documents protected as attorney work product are nonetheless discoverable if a party can establish a "substantial need" for the documents and cannot obtain equivalent materials without "undue hardship." Fed.R.Civ.P. 26(b)(3)(A)(ii). This burden is difficult to meet and is satisfied only in "rare situations, such as those involving witness unavailability." *Eagle Compressors, Inc. v. HEC Liquidating Corp.*, 206 F.R.D. 474, 478 (N.D.Ill.2002). But here, there is no substantial need. Plaintiff has Mr. Seidman's notes, had the opportunity to depose Mr. Seidman about the meeting, and Ms. Rose as well. The only point to obtaining Mr. Kanne's notes would be to gain his mental impressions and strategies, and that is not permissible given the claim of privilege.[3]

Plaintiff also argues that, *because* plaintiff has Mr. Seidman's notes and has obtained testimony regarding the meeting, CORT and Mr. Kanne have somehow waived the protections of the work product doctrine. [Dkt. #126, at 11]. A party can waive work product protection by making portions of protected information public. *See Appleton Papers, Inc. v. EPA*, 702 F.3d 1018, 1024-25 (7th Cir. 2012). But CORT did not produce any of Mr. Kanne's materials. Any waiver in such a situation would be limited to "the specific information submitted [produced"; such production "does not constitute waiver of all related material." *Appleton Papers*, 702 F.3d at 1023. Accordingly, "disclosure of some documents does not necessarily destroy work-product protection for other documents of the same character." *Appleton Papers*, 702 F.3d at 1025. At most, that's all that

---

[3] Even when a litigant makes the substantial need showing, "opinion" work product remains protected. Fed.R.Civ.P. 26(b)(3)(B) ("If the court orders discovery of those materials [for which a party has a substantial need], it must protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation."). Thus, although there are differing levels of protection for fact and opinion work product, the Federal Rules protect both types. *Appleton Papers, Inc. v. E.P.A.*, 702 F.3d 1018, 1023–24 (7th Cir. 2012).

6

arguably occurred here. Obviously, the subject matter waiver that plaintiff is arguing for would essentially destroy the work product doctrine. *Appleton Papers*, 702 F.3d at 1025 (". . . finding waiver is inconsistent with Hickman's central tenet—by requiring the [party] to disclose all material related to documents it used we would discourage creating drafts and supporting documentation in the first place."); *Hickman v. Taylor*, 329 U.S. 495, 511 (1947)("Were such materials open to opposing counsel ... much of what is now put down in writing would remain unwritten.").

## CONCLUSION

For the foregoing reasons, plaintiff's motion to compel [Dkt. #126] is denied. The parties are reminded that discovery closes on May 30th. As of March 25th, the parties have enjoyed *365 days of discovery extensions*. [Dkt. #45, 69, 77, 110, 136]. As such, their lack of focus on significant matters, *see HyperQuest, Inc. v. N'Site Sols., Inc*., 2008 WL 3978310, at *2 (N.D. Ill. 2008)(Shadur, J.)(parties display "a sort of instinct for the capillary rather than the jugular."), and lack of incentive to resolve what, in other cases, would be routine matters is at least partially the court's fault for giving them a free hand with no end in sight. Accordingly, while it is rare that the words "no further extensions will be given" are adhered to, they will be in this case.

**ENTERED:** _____
UNITED STATES MAGISTRATE JUDGE

**DATE:** 4/15/21

8